Entered on Docket March 6, 2024

**Below is a Memorandum Decision of the Court.**



_____
**Marc Barreca**
**U.S. Bankruptcy Court Judge**

**(Dated as of Entered on Docket date above)**

_____

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| In re: GERALD JOSEPH CANTWELL AND MARY ANNE CANTWELL,<br><br>Joint Debtors. | Case No. 22-11322-MLB |
| EDMUND J. WOOD, solely in his capacity as Chapter 7 Trustee for GERALD JOSEPH CANTWELL and MARY ANNE CANTWELL,<br><br>Plaintiff,<br><br>v.<br>GERALD JOSEPH CANTWELL a/k/a JOSEPH CANTWELL a/k/a JOE G. CANTWELL a/k/a JOE CANTWELL AND MARY ANNE CANTWELL a/k/a MARY A. CANTWELL a/k/a MARY CANTWELL; THE STATE OF WASHINGTON; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ITS SUCCESSORS AND ASSIGNS; FLAGSTAR BANK, FSB; AND BEST MORTGAGE INC.,<br>Defendants. | Adversary No. 23-01044-MLB<br><br>**MEMORANDUM DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

# INTRODUCTION

These matters came before me on the cross-motions for summary judgment of Defendants Joseph Cantwell and Mary Cantwell (hereafter, together the "Cantwells") and Plaintiff Edmund J. Wood, Chapter 7 Trustee (hereafter, the "Trustee"). *Adv. Dkts. 31 and 47.*[1] I am asked to determine whether a statutory lien arose upon the filing of the Cantwells' bankruptcy case and whether the Trustee may avoid and preserve the lien for the benefit of the Cantwells' bankruptcy estate. The short answer is that the Cantwells were not "engaging in business" as defined by state statute at or near the date of their bankruptcy petition and therefore, no lien arose to avoid or preserve.

The Trustee asserts that the Cantwells are personally liable for tax debts arising from Mr. Cantwell's prior business engagements and that upon the Cantwells' filing of their Chapter 7 bankruptcy petition a statutory lien (hereafter, the "Asserted Lien") arose in favor of the Washington State Department of Revenue (hereafter, the "DOR") and attached to the Cantwells' property.[2] The Trustee further asserts that the Alleged Lien may be avoided and preserved for the benefit of the bankruptcy estate pursuant to 11 U.S.C. §§ 545 and 551. The Trustee also seeks declaratory judgment on various matters that are dependent upon the existence of the Asserted Lien. Conversely, the Cantwells argue that they were not "engaging in business" as of their petition date and therefore, based on the plain language of RCW 82.32.240, the Asserted Lien neither arose nor attached to their property. The DOR, which is also a defendant in this adversary

---

[1] All citations herein to "Bankr. Dkt." and "Adv. Dkt." refer to the Cantwells' Chapter 7 bankruptcy case, Case No. 22-11322, and this Adversary Proceeding, Case No. 23-01044, respectively.
[2] Although the lien statute in question, RCW 82.32.240, references both real and personal property, the Trustee only discusses the lien attaching to the Cantwells' real property.

**MEMORANDUM DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**- 2

proceeding, asserts that the Cantwells are liable for certain business tax debts but takes no position on whether the Asserted Lien arose or attached to the Cantwells' property.

## PROCEDURAL BACKGROUND

On June 27, 2023 the Trustee filed a complaint initiating this adversary proceeding. *Adv. Dkt. 1*. On September 25, 2023, the Trustee filed a motion for default against defendants Mortgage Electronic Registration Systems, Inc., Flagstar Bank FSB, and Best Mortgage Inc. *Adv. Dkt. 21*. On October 23, 2023, I granted that motion but have not entered a default judgment. *Adv. Dkt. 30*. On October 23, 2023, the Trustee filed his Motion for Summary Judgment and the DOR filed a Memorandum Regarding Summary Judgment stating its position on the Cantwells' personal liability for tax obligations of a business formerly associated with Mr. Cantwell. *Adv. Dkt. 35*. On November 20, 2023, I held a hearing on the Trustee's Motion, heard oral argument, and continued the matter to allow for discovery and supplemental briefing. *Adv. Dkt. 45*. On January 25, 2024, the Cantwells filed their Motion for Summary Judgment, on January 31, 2024 the Trustee filed his Supplemental Memorandum in Support of Plaintiff's Motion for Summary Judgment, and on February 1, 2024 the DOR filed a Supplemental Briefing Concerning RCW 82.32.240. *Adv. Dkts. 48 and 51*. On February 14, 2024, I held a hearing on the cross-motions, heard oral argument, and took the motions under advisement.

## JURISDICTION

I have jurisdiction over the parties and subject matter of these motions pursuant to 28 U.S.C. §§ 157(b)(2)(K) and 1334.

## UNCONTESTED FACTS

The following facts are uncontested. Emeral Construction, LLC (hereafter, "Emeral") was formed in Washington State on October 19, 2021 by individuals other than the Cantwells.

*DOR Decl., Adv. Dkt. 35*. "In July of 2020, Joe Cantwell amended Emeral's formation documents, indicating he was the registered agent for Emeral. Thereafter, the Secretary of State's office has designated Joe Cantwell as a governor of Emeral." *Id*. Soon after formation, Emeral fell delinquent on its payment of business and occupation taxes (hereafter, "B&O tax") and failed to remit collected sales tax due to the DOR for all four tax quarters of 2020. *Id.* By December 31, 2020, Emeral had ceased business. *Id.* The Trustee indicates that the last date for which he can establish that Mr. Cantwell was "engaging in business" was July 19, 2021, when Mr. Cantwell filed an annual report (hereafter, the "Emeral Annual Report") with the Secretary of State's office. *Trustee Decl., Adv. Dkt. 50*. No evidence has been presented that either of the Cantwells engaged in any other business, whether personally or on behalf of another business entity, after the filing of the Emeral Annual Report.

On February 9, 2022, pursuant to RCW 82.32.210, the DOR issued a tax warrant against Emeral asserting B&O and collected but unremitted sales taxes totaling $182,973.54, penalties of $33,290.40, and interest of $1,784.63. *DOR Decl., Adv. Dkt. 35*. On March 18, 2022, the DOR filed the Emeral tax warrant in Snohomish County Superior Court and the court clerk entered a judgment. *Id.* On August 15, 2022 (hereafter, the "Petition Date"), the Cantwells filed a voluntary Chapter 7 bankruptcy petition (hereafter, the "Bankruptcy Case"). *Bankr. Dkt. 1*. As of the Petition Date, the Cantwells owned a parcel of improved real property commonly known as 8510 59th Avenue NE, Marysville, WA 98270 (hereafter, the "Residence"). *Id*. On September 16, 2022, the DOR filed a claim in the Cantwells' Bankruptcy Case and on January 22, 2024 it amended the claim to $179,531.77. *Bankr. Claims Register, 1-3*.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a), applicable to bankruptcy adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323(1986). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Id.* While all justifiable inferences are to be drawn in favor of the non-moving party, when the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. *Matsushita Elec. Indus Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citations omitted).

## ARGUMENT AND ANALYSIS

"The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien … first becomes effective against the debtor … when a case under this title concerning the debtor is commenced." 11 U.S.C. § 545(1)(A). Any lien avoided pursuant to 11 U.S.C. § 545 is then "preserved for the benefit of the estate but only with respect to property of the estate." 11 U.S.C. § 551.

**Below is a Memorandum Decision of the Court.**

The Trustee argues that because the Cantwells are personally liable for the Emeral tax obligations, the Asserted Lien attached to the Residence as of the Petition Date, and therefore he may avoid and preserve the Asserted Lien for the benefit of the bankruptcy estate. The Trustee argues that the Asserted Lien arises under Washington State's excise tax scheme, which states in relevant part:

> In all cases of probate, insolvency, assignment for the benefit of creditors, or bankruptcy, involving any taxpayer who is, or decedent who was, engaging in business, the claim of the state for said taxes and all increases and penalties thereon shall be a lien upon all real and personal property of the taxpayer…
> The lien provided for by this section shall attach as of the date of the assignment for the benefit of creditors or of the initiation of the probate, insolvency, or bankruptcy proceedings: PROVIDED, That this sentence shall not be construed as affecting the validity or priority of any earlier lien that may have attached previously in favor of the state under any other section of this title.

RCW 82.32.240.

Under the statute, a tax lien against property "shall attach" (1) as of the date of an assignment for the benefit of creditors, or at the initiation of insolvency or bankruptcy proceedings (2) involving a "taxpayer" (3) "who is … engaging in business." (emphasis added). A tax lien may also attach at the initiation of a probate proceeding for property of a decedent who was engaging in business. The Washington State Legislature has broadly defined "engaging in business" under Title 82 to include "the exercise of corporate or franchise powers as well as liquidating a business." RCW 82.04.150.

The parties do not dispute that the Cantwells' bankruptcy filing is a proceeding of the kind referenced by the statute, or that Mr. Cantwell is a "taxpayer" personally liable for Emeral's tax obligations because of Mr. Cantwell's status as a "responsible individual" for Emeral under RCW § 82.32.145(1) and (9)(g)(i). The parties' dispute centers on the statutory language:

**MEMORANDUM DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**- 6

Case 23-01044-MLB    Doc 56    Filed 03/06/24    Ent. 03/06/24 14:43:43    Pg. 6 of 10

"taxpayer who is, or decedent who was, engaging in business" and its applicability to the facts in the present case.[3]

The Cantwells argue that the statutory language — "taxpayer who is … engaging in business" — is unambiguous and should be given its plain meaning that a taxpayer literally be engaged in business on the date of initiation of an insolvency proceeding for the lien to arise. The Cantwells further assert that based on the statute's plain meaning, the Asserted Lien did not arise on the Petition Date as it is uncontested that Emeral ceased business on December 31, 2021 and the last known act performed by either of the Cantwells that would qualify as "engaging in business" was the filing of the Emeral Annual Report.

Courts are to employ the "plain meaning" rule when interpreting Washington statutes:

> To determine legislative intent, this court looks first to the language of the statute. If the statute is unambiguous, its meaning is to be derived from the plain language of the statute alone. Legislative definitions provided in a statute are controlling, but in the absence of a statutory definition, courts may give a term its plain and ordinary meaning by reference to a standard dictionary.

*Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles*, 148 Wn.2d 224, 239–40 (2002) (cleaned up).

Although the Trustee appears to agree that the statutory language is plain on its face, he argues that its plain meaning leads to absurd results because a taxpayer could arguably preclude the statutory lien from arising and attaching simply by closing a business on the eve of initiating an insolvency proceeding. Based on the Washington Supreme Court's "absurd results" doctrine, the Trustee proposes an alternative interpretation of the statute:

---

[3] The language "taxpayer who is, or decedent who was, engaging in business" was added to RCW 82.32.240 under the Estate and Transfer Tax Act of 1988. Laws of 1988, ch. 64, § 23. Both the Trustee and the DOR submit that there is no known or ascertainable legislative history regarding the reason for addition of this language to the statute.

> A taxpayer such as Cantwell should be seen as "engaging in business," that is, the business that gave rise to the tax liability and for which the taxpayer is a "responsible" individual under RCW 82.32.145, if the taxpayer files an individual bankruptcy within four years of the tax year, consistent with the four-year limitations period for the collection of tax under RCW 82.32.045(4) and WAC 458-20-230(2).

(Adv. Dkt. 48, p. 8).

In *Five Corners Family Farmers v. State*, the Washington Supreme Court discussed the "absurd results" doctrine at length. 173 Wn.2d 296, 311 (2011). In *Five Corners*, the parties disputed the legislative intent behind permit exemptions for the extraction of public ground water. *Id.* at 300. The respondents asserted that groundwater extraction for the purpose of livestock watering was exempt from the statute's permit requirement for extractions of over five-thousand gallons per day. *Id.* at 311. The appellants asserted that a plain meaning statutory interpretation allowing for what amounted to "unlimited" extraction of ground water for livestock watering purposes was unreasonable and produced absurd results. *Id.* at 310. Regarding the "absurd results" doctrine, the Washington State Supreme Court stated the following:

> Appellants assert that interpreting the exemption clause to allow withdrawal of "unlimited" groundwater for stock-watering purposes is an "absurd result." It is true that we will avoid [a] literal reading of a statute which would result in unlikely, absurd, or strained consequences. However, this canon of construction must be applied sparingly. Application of the absurd results canon, by its terms, refuses to give effect to the words the legislature has written; it necessarily results in a court disregarding an otherwise plain meaning and inserting or removing statutory language, a task that is decidedly the province of the legislature. This raises separation of powers concerns. Thus, in *State v. Ervin*, 169 Wn.2d 815, 824, 239 P.3d 354 (2010), we held that if a result "is conceivable, the result is not absurd."

*Id.* at 311 (cleaned up). The Supreme Court determined that it was conceivable that the legislature placed sufficient importance on the availability of water for livestock watering such

that it intended to allow for permit-exempt extraction of groundwater without a specified gallon-per-day quantity. The Court determined that because the legislature's intent was conceivable, the result of the exemption was not absurd, and ruled in favor of the respondents. *Id.* at 311-12.

Here, the Trustee's proposed interpretation of RCW 82.32.240 varies significantly from the plain meaning of the language "taxpayer who is … engaging in business" — in essence altering the words to include "or was within the applicable statute of limitations" engaging in business. The Trustee's interpretation is dependent on a conclusion that the literal meaning of the statute is absurd. Although the Trustee is correct that a literal interpretation of the statute would result in insolvent taxpayers potentially avoiding the lien by ceasing business operations prior to an insolvency proceeding, the limited circumstances under which the lien would attach are still a plausible intent of the legislature. Under a literal reading of the statute, the lien would arise where a taxpayer makes an assignment for the benefit of creditors under RCW 7.08 while still engaging in business, as the assignee subsequently appointed as receiver under RCW 7.60 could continue business operations of the assignor entity. The statutory lien would also arise where a taxpayer files a Chapter 11 bankruptcy petition with the intention of continuing to operate a business and reorganize. It is conceivable that the limited circumstances in which the lien would attach under a literal reading of the statute were intended by legislature. Although it is reasonable for the Trustee to question whether the resulting limitation from a plain meaning interpretation of the statute is optimal for the enforcement of tax debts, the results are conceivable and therefore the plain meaning is not absurd.[4]

---

[4] I need not determine whether the lien would arise where a taxpayer ceased engaging in business closer to, or on the actual eve of, an insolvency proceeding as Mr. Cantwell's final known act of "engaging in business" occurred over a year prior to the Petition Date.

**Below is a Memorandum Decision of the Court.**

## CONCLUSION

As the Cantwells were not engaging in business at or even near the Petition Date of their Bankruptcy Case, no lien arose under RCW 82.32.240 for the Trustee to avoid or preserve under 11 U.S.C. §§ 545 and 551. Accordingly, the Trustee's Motion for Summary Judgment is denied and the Cantwells' Motion for Summary Judgment is granted. Judgment will be entered in favor of all defendants.

/// End of Memorandum Decision///